Julian M. CARROLL, Governor, Commonwealth of Kentucky, and Commonwealth of Kentucky ex rel. Julian M. Carroll, Governor, Plaintiffs,

v.

DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, United States of America, et al., Defendants.

No. C–75–0305–L(G).

United States District Court,
W. D. Kentucky,
Louisville Division.

March 19, 1976.

236

Bert T. Combs, Tarrant, Combs & Bullitt, Louisville, Ky., William E. Scent, Hopkinsville, Ky., for plaintiffs.

George J. Long, U. S. Dist. Atty., John A. Fulton, Woodward, Hobson & Fulton, Louisville, Ky., for defendants.

## MEMORANDUM OPINION AND ORDER

JAMES F. GORDON, Senior District Judge.

On July 30, 1975, this Court entered a judgment in *Newburg Area Council, Inc. v. Board of Education of Jefferson County*, Civil Nos. 7045 and 7291 (W.D. Ky.1975), *app. pending* No. 75–1737 (6th Cir.), requiring the implementation of a plan for public school desegregation in Jefferson County, Kentucky. On September 15, 1975, the plaintiffs Julian M. Carroll, Governor of Kentucky, and the Commonwealth of Kentucky filed the instant action for declaratory relief as to the responsibility for that portion of the increased cost of operating the Jefferson County public school system which would be attributed to additional busing of students required by the desegregation order.[1] This case is now before us on plaintiffs' motion for partial summary judgment and the federal defendants' motion to dismiss plaintiffs' complaint, or in the alternative for summary judgment. The Jefferson County Board of Education has responded to plaintiffs' motion and we consider this response to be a motion for summary judgment. Having concluded that there is no factual dispute between the parties and that this matter is otherwise properly before us pursuant to Fed.R.Civ.P. Rule 56, we proceed to the merits of the case.

Plaintiffs raise two arguments in their motion for partial summary judgment. They seek a declaration of rights that (1) the allocation of funds for transportation to the Jefferson County Board of Education pursuant to the Kentucky Foundation Program Act, K.R.S. Chapter 157A, should be computed on the basis of transportation of students within that district to the nearest school available to them; and (2) Title 20 U.S.C. § 1652(a), Title 20 U.S.C. § 1228 and Section 315(b)

---

1. On February 23, 1976 plaintiffs moved for leave to amend their complaint. Since we have this day granted plaintiffs' motion to amend we will consider the points raised in the amended complaint, particularly the alleged unconstitutionality of several federal statutes.

of P.L. 94–94 (89 Stat. 468) are unconstitutional as violative of the separation of powers provisions and the Fifth Amendment of the Constitution of the United States.[2]

Plaintiffs' first argument when joined with the defendants' contentions merely seeks a construction of the state's Foundation Program Act. Plaintiffs urge that the correct construction of these statutes is that no state funds should be allocated to reimburse the local school district for the revenue spent in transporting students beyond the nearest adequate school available to them. The Jefferson County Board of Education contends "that the purpose of the General Assembly in enacting the Kentucky Foundation Act (Chapter 157A) was to guarantee each pupil in the common schools of the state the opportunity to avail himself of the programs appropriate for his educational needs, regardless of geographical differences and varying economic conditions and that the purpose of the Act was to provide an efficient and equitable distribution of school funds among the common school districts".[3]

Section 183 of the Kentucky Constitution of 1890 requires the Kentucky General Assembly, by appropriate legislation, to provide for an efficient system of common schools throughout the state. Section 186 of the state constitution states: "All funds accruing to the school fund shall be used for the maintenance of the public schools of the Commonwealth, and for no other purpose, and the General Assembly shall by general law prescribe the manner of the distribution of the public school fund among the school districts and its use for public school purposes." In 1974 the legislature enacted K.R.S. 157A.010 to 157A.990, the Foundation Program Act.

In determining the proper construction of the Foundation Program Act we must consider the legislature's intention when it enacted that legislation. The general assembly set forth its intention in section 157A.010, which states in pertinent part:

(1) It is the intention of the general assembly in enacting this legislation to guarantee to each pupil in the common schools of this state the opportunity to avail himself of those programs and services appropriate to his educational needs, regardless of geographical differences and varying economic conditions. This chapter is intended to provide for an efficient system of common schools throughout the state and an equitable distribution of school funds among the common school districts in accordance with the mandates of sections 183 and 186, respectively, of the Kentucky Constitution.

All parties apparently agree that for our purposes it is the second sentence in section 157A.010 which is analytically most significant. We concur. Ergo, we must determine what the legislature intended when it declared that the Foundation Program Act was to provide for an "efficient system of common schools throughout the state" and that there shall be "an equitable distribution of school funds among the common school districts" in accordance with the mandates of sections 183 and 186 of the state constitution.

Plaintiffs argue that the state is not required constitutionally, section 183 of the state constitution, nor otherwise, section 157A.010 of the Foundation Program Act, to provide the revenue necessary to pay for the additional cost of transporting those children ordered to be bused in Jefferson County since "no one can seriously contend that cross district busing is an efficient method of operat-

2. Plaintiffs allege these statutes are unconstitutional insofar as they prohibit or restrict the use of federal funds for the transportation of students or teachers in order to overcome racial imbalance in any school or school system, or in order to carry out a plan of racial deseg-

regation in any school or school system, or for the purchase of equipment for such transportation.

3. *Brief of Defendant, Jefferson County Board of Education* at 5.

ing a school system . . . ." [4] Plaintiffs' argument is merely a philosophical statement rather than a legal position.

■ We need not reach the ultimate definition of what is an "efficient system of common schools throughout the state." At the very least an efficient system of schools is a system which exists and operates. To exist the Jefferson County schools must be operated and maintained in a constitutional manner, as prescribed by the Fourteenth Amendment to the Constitution of the United States. The transportation of over 22,000 students, as provided for in the desegregation order of July 30, 1975, was and is necessary to dismantle an unconstitutional school system and to create a system compatible with the guarantees of the Fourteenth Amendment. Given the state's constitutional duty to provide public education in Kentucky and to fund the public school system that is created, the burden of paying for the additional cost of transporting the students required to be bused under the desegregation order falls on the state, assuming the local school district is unable to meet the financial obligation of providing the required transportation. See K.R.S. 158.110. In short, once the citizens of Kentucky made the voluntary commitment to educate the children of this state in public schools neither the Kentucky General Assembly nor those individuals responsible for discharging the duties imposed on them by the state constitution and the Foundation Program Act can abrogate those duties merely because the monetary obligation becomes unexpectedly large or even onerous.

■ The plaintiffs also argue that K.R.S. Chapter 157A should not be construed to require the state to furnish the additional costs of transporting the students required to be bused because that may lead to a disproportionately greater distribution of funds to Jefferson County at the expense of the other school districts; hence, this would violate the legislature's intention of providing "an eq-

uitable distribution of school funds among the common school districts" as required by sections 183 and 186 of the state constitution.

Plaintiffs' argument is not persuasive for two reasons. Initially, plaintiffs fail to understand that this phrase must be construed in light of the constitutional mandate of sections 183 and 186. As stated above, these sections require the state authorities to operate and maintain a school system, therefore, the school system must be operated and maintained in a constitutional fashion. Secondly, the plaintiffs' interpretation of this phrase is improper. The intent of the general assembly was that the determination of transportation costs under K.R.S. 157A.090 was to be made for *all* school districts pursuant to a similar formula. If the distributions are made under a common formula then the equitable distribution sought by the legislature is achieved since the same factors are considered before making an allocation to any school district.

■ In conclusion we hold that the Superintendent of Public Instruction, in computing the transportation funds available to Jefferson County, is to include in his computation under the provisions of K.R.S. Chapter 157A, all transportation costs of Jefferson County in the identical manner in which transportation costs are determined under K.R.S. 157A.090 for all other school districts in the state.

The plaintiffs' second contention is that 20 U.S.C. § 1652(a), 20 U.S.C. § 1228 and section 315(b) of P.L. 94–94 are unconstitutional as violative of the separation of powers provisions and the Fifth Amendment to the United States Constitution. After careful consideration of the plaintiffs' contentions we have concluded that the arguments concerning the unconstitutionality of these statutes are meritless.

■ These contested federal statutes do not violate the separation of powers provisions because they do not interfere

4. *Plaintiffs' Brief in Support of Motion for Summary Judgment* at 4.

with the enforcement of the Court's desegregation order. The burden of paying the cost of transporting these students remains on those responsible for the creation of the unconstitutional school system, the local school district and the state. Plaintiffs' Fifth Amendment argument is that if the Fourteenth Amendment prohibits states from legislating against the use of state funds for court ordered busing then the Fifth Amendment prohibits the United States from enacting similar laws. Plaintiffs' argument fails because there is no federal constitutional right to an education; however, the Kentucky Constitution specifically provides that the General Assembly shall provide an efficient system of schools throughout the state. Thus, the Congress is not required to enact any legislation concerning education. If Congress does enact educational legislation it may restrict the allocation of federal funds in the manner it wishes, assuming it does not violate any explicit or implicit federal constitutional right or obligation.[5] However, in Kentucky where a state constitutional right to an education exists, the legislature and those responsible for implementing this constitutional right must abide by the guarantees in both the state constitution and the federal constitution, including the Fourteenth Amendment.

The basic factual thrust of plaintiffs' argument concerning the alleged unconstitutionality of these statutes is that "but for" these federal statutes the Commonwealth of Kentucky could or would receive federal revenue that would be used to defray the cost of transporting students, as required by our desegregation order. This argument must be rejected for several reasons: (1) There exists no federal constitutional right to an education, thus, Congress is not required to enact legislation directed to state educational systems; (2) Although Congress has voluntarily enacted legislation pertaining to education this

does not require Congress to furnish the funds necessary to remedy all problems existent in a school system; and (3) the programs that Congress has enacted would not provide funds for defraying the cost of transporting these children even if the Congressional prohibition was excluded.

There is no explicit provision in the Constitution of the United States which requires the national government to assist the states in the operation of their public school systems. In fact, education itself is not among the rights afforded explicit or implicit protection under the federal constitution nor has it been classified as a "fundamental" right. *San Antonio School District v. Rodriquez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Since there is no federal constitutional right to an education the Congress is not, and cannot be, compelled to allocate funds for educational purposes or programs.

However, Congress has voluntarily created and funded various educational programs. Albeit Congress has enacted certain educational legislation this does not mean that it has superseded the state and local school districts as the entities primarily responsible for providing the required funds to operate the school system. Clearly when Congress enacts legislation directed to a subject matter which has traditionally been considered an area of state concern, such as education, the Congress can select one aspect of the area and provide funds, neglecting other areas. *Jefferson v. Hackney*, 406 U.S. 535, 546–47, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285, 295 (1972); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S. Ct. 461, 465, 99 L.Ed. 563, 573 (1955).

Importantly, the programs that Congress has enacted would not provide funds for defraying the cost of transporting students even if the congressional prohibition was excluded. In answer to the federal defendants first set of interrogatories the plaintiffs have listed

---

**5.** We have determined, for the reasons herein expressed, the prohibitions existing in the challenged statutes do not violate any constitutional right or obligation.

the congressional enactments from which it is alleged that federal funds would be derived to pay the cost of transporting students under the desegregation order. Of the legislation listed[6] only the Emergency School Aid Act (ESAA) could conceivably relate to the plaintiffs' assertion that but for the prohibition included in the federal statutes there would be federal funds available to the Commonwealth to defray the cost of transporting the students who were ordered to be bused.

While the stated purpose of the ESAA is to assist in the elimination of segregation and discrimination, and to aid school children to overcome the educational disadvantages of minority group isolation, 20 U.S.C. § 1601(b), the purposes for which the ESAA funds may be expended are limited to twelve highly specialized activities. 20 U.S.C. § 1606(a)(1)–(12). These twelve programs are designed to supplement, *not supplant,* the efforts of the grantee in desegregating its schools. Thus, ESAA does not authorize the national government to underwrite the basic costs of desegregation; instead, it makes possible specialized programs to assist in desegregation which a local school district could not otherwise afford or provide. Of the twelve programs provided for in ESAA, 20 U.S.C. § 1606(a)(1)–(12), none can be reasonably construed to permit expenditures for ordinary home-to-school bus transportation.

In brief, notwithstanding plaintiffs' assertions to the contrary, it is patent that no education assistance which the Commonwealth of Kentucky may receive from the Congress could be expended for student home-to-school transportation even if the prohibitions in the alleged unconstitutional statutes were absent.[7]

Since we have determined, for the reasons heretofore stated, that the federal statutes in question are not violative of the separation of powers provisions nor of the Fifth Amendment of the Constitution of the United States, it is unnecessary for us to address the remaining arguments advanced by the federal defendants.

WHEREFORE, for the foregoing reasons, it is hereby declared that Title 20 U.S.C. § 1652(a), Title 20 U.S.C. § 1228 and Section 315(b) of P.L. 94–94 are not violative of the separation of powers provisions nor the Fifth Amendment of the Constitution of the United States, and

IT IS FURTHER DECLARED that the Superintendent of Public Instruction, in computing the transportation funds available to Jefferson County, is to include in his computation under the provisions of K.R.S. Chapter 157A, all transportation costs of Jefferson County in the identical manner in which transportation costs are determined under K.R.S. 157A.090 for all other school districts in the state; and

It IS ORDERED that the plaintiffs' motion for partial summary judgment shall be, and the same is hereby, overruled; and, that the federal defendants' and the Jefferson County Board of Education's separate motions for summary judgment shall be, and the same are hereby, granted. Costs are assessed against the plaintiffs.

---

6. Title I of the Elementary-Secondary Education Act of 1965, *as amended,* 20 U.S.C. § 241a *et seq.;* Federal Impact Aid pursuant to P.L. 81–874, 64 Stat. 1100, 20 U.S.C. §§ 236–241; Educational Innovation and Support Programs under Title III of the Elementary-Secondary Education Act of 1965, *as amended,* 20 U.S.C. § 841 *et seq.;* and the Emergency School Aid Act, enacted as Title VII of P.L. 92–318, 20 U.S.C. § 1601 *et seq.*

7. The federal defendants' allegation that the State of Kentucky and the Jefferson County school system could not receive any federal funds which could be used to defray the cost of transporting children to their assigned school is also supported by exhibit 1 filed with the Board of Education's brief. This exhibit demonstrates no funds actually received by the Jefferson County Schools from the Department of Health, Education and Welfare could have been applied to offset the cost of transporting students.