Julian M. CARROLL, Governor, et al.,
Defendants-Appellants,

v.

BOARD OF EDUCATION OF JEFFER-
SON COUNTY, KENTUCKY, et al.,
Plaintiffs-Appellees.

Julian M. CARROLL, Governor, et al.,
Plaintiffs-Appellants,

v.

DEPARTMENT OF HEALTH, EDUCA-
TION AND WELFARE et al.,
Defendants-Appellees.

Nos. 76–2525–76–2526, 76–2158.

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1977.

Decided Aug. 23, 1977.

Robert F. Stephens, Atty. Gen. of Ky.,
Robert L. Chenoweth, Asst. Atty. Gen.,
Frankfort, Ky., William E. Scent, Keith
Scent, Kirkham & Walton, Hopkinsville,
Ky., Bert T. Combs, Tarrant, Combs & Bul-
litt, Richard W. Iler, Stewart L. Prather,
Louisville, Ky., for Julian M. Carroll et al.

George J. Long, U. S. Atty., Richard A.
Dennis, Louisville, Ky., Robert S. Green-
span, Leonard Schaitman, Frank A. Rosen-
feld, Attys., U. S. Dept. of Justice, Civ. Div.,
Appellate Section, Washington, D. C., for
Dept. of HEW.

William H. Fulton, Woodward, Hobson &
Fulton, E. Preston Young, John A. Fulton,
Louisville, Ky., for Jefferson County Bd. of
Ed.

Before PHILLIPS, Chief Judge, and PECK and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

These consolidated appeals are another chapter in the litigation involving the desegregation of the schools of Jefferson County, Kentucky.[1]

The principal question concerns the constitutionality of a State statute which would thwart the desegregation plan adopted by the district court. The district judge declared portions of this statute to be unconstitutional. We affirm.

Also involved on this appeal is a challenge by State officials to the constitutionality of three federal statutes prohibiting the expenditure of federal funds on school busing for purposes of desegregation. For the reasons hereinafter set forth, we conclude that there is no case or controversy on the present appeal requiring adjudication of the constitutionality of the three challenged federal statutes.

I.

On July 30, 1975, the district court entered a judgment requiring the implementation of a plan for school desegregation, which subsequently was approved by this court in *Cunningham v. Grayson, supra,* 541 F.2d 538. On September 15, 1975, plaintiffs in No. 76–2158 filed a declaratory judgment action contending that the allocation of state funds to the Jefferson County Board of Education pursuant to the Kentucky Foundation Program Act, K.R.S. ch. 157A, for transportation purposes should be computed on the basis of transportation of students within the county to the nearest school available to them. The plaintiffs in that case relied upon § 183 of the Kentucky Constitution, which requires the General Assembly by appropriate legislation to provide for an "efficient" system of common schools throughout the state. The argument was made that "no one can seriously contend that cross district busing is an efficient method of operating a school system." Senior District Judge James F. Gordon rejected this contention in an opinion published at 410 F.Supp. 234 (W.D.Ky.1976), saying:

We need not reach the ultimate definition of what is an "efficient system of common schools throughout the state." At the very least an efficient system of schools is a system which exists and operates. To exist the Jefferson County schools must be operated and maintained in a constitutional manner, as prescribed by the Fourteenth Amendment to the Constitution of the United States. The transportation of over 22,000 students, as provided for in the desegregation order of July 30, 1975, was and is necessary to dismantle an unconstitutional school system and to create a system compatible with the guarantees of the Fourteenth Amendment. Given the state's constitutional duty to provide public education in Kentucky and to fund the public school system that is created, the burden of paying for the additional cost of transporting the students required to be bused under the desegregation order falls on the state, assuming the local school district is unable to meet the financial obligation of providing the required transportation. *See* K.R.S. 158.110. In short, once the citizens of Kentucky made the voluntary commitment to educate the children of this state in public schools neither the Kentucky General Assembly nor those individuals responsible for discharging the duties imposed on them by the state constitution and the Foundation Program Act can abrogate those duties merely because the monetary obligation becomes unexpectedly large or even onerous.

\*   \*   \*   \*   \*   \*

1. *See Newburg Area Council, Inc. v. Board of Education,* 489 F.2d 925 (6th Cir. 1973), *vacated,* 418 U.S. 918, 94 S.Ct. 3208, 41 L.Ed.2d 1160 (1974); *Newburg Area Council, Inc. v. Board of Education,* 510 F.2d 1358 (6th Cir. 1974), *cert. denied,* 421 U.S. 931, 95 S.Ct. 1658, 44 L.Ed.2d 88 (1975); *Newburg Area Council, Inc. v. Gordon,* 521 F.2d 578 (6th Cir. 1975); *Cunningham v. Grayson,* 541 F.2d 538 (6th Cir. 1976), *cert. denied,* 429 U.S. 1074, 97 S.Ct. 812, 50 L.Ed.2d 792 (1977).

In conclusion we hold that the Superintendent of Public Instruction, in computing the transportation funds available to Jefferson County, is to include in his computation under the provisions of K.R.S. Chapter 157A, all transportation costs of Jefferson County in the identical manner in which transportation costs are determined under K.R.S. 157A.090 for all other school districts in the state. 410 F.Supp. at 238.

The above-quoted opinion of Judge Gordon was announced on March 19, 1976. On March 29, 1976, the General Assembly enacted into law House Bill No. 168 which became effective immediately. A copy of this statute is made an appendix to this opinion.

■ The constitutionality of this statute was attacked by the Jefferson County Board of Education. In an opinion announced August 27, 1976, the district court held §§ 1 and 2 and ¶¶ 1, 2 and 3 of § 3 of the statute to be unconstitutional. With respect to ¶¶ 1 and 2 of § 3 Judge Gordon said:

Paragraphs 1 and 2 in essence state that local school boards may provide money from their general funds for the transportation of elementary school students to the nearest school able to accommodate the child in his particular grade. The obvious effect of these paragraphs is that it allows or authorizes local school boards to refuse to expend funds for the transportation of elementary school students beyond the nearest school able to provide space for the student in the appropriate grade level.

The defendant contends these first two paragraphs are not unconstitutional because the legislature has not *prohibited* school boards from expending their funds in transporting elementary school students beyond the nearest available school which can seat that child in his required class but merely gives the school board that *discretion* if it wishes to avail itself of that authority. This argument is unpersuasive when juxtaposed the legal responsibilities of the Jefferson County Board of Education. Paragraphs 1 and 2 are patently unconstitutional insofar as they give the Jefferson County Board of Education the discretion to refuse to provide transportation for elementary school students beyond the nearest school able to provide a space in the appropriate classroom for the transported student. This discretion has the effect of annulling our desegregation order of July 30, 1975, which *requires* the Jefferson County Board of Education to dismantle its previously unconstitutional school system by transporting some 22,000 students to assigned schools within the school district. Thus, if the Court determined that insofar as Jefferson County was concerned paragraphs 1 and 2 in Section 3 of H.B. 168 were constitutional, we would in effect be allowing the General Assembly of Kentucky to circumvent our desegregation order. We cannot take such a position. *Bradley v. Milliken*, 433 F.2d 897, 902 (6th Cir. 1970).

In conclusion paragraphs 1 and 2 of Section 3 of H.B. 168 are unconstitutional insofar as they are made applicable to the Jefferson County Board of Education because they (1) conflict with this Court's duty to remove all remaining vestiges of state-imposed segregation in the Jefferson County school district, a duty imposed on this Court by the Sixth Circuit Court of Appeals in its order of December 11, 1974. *Newburg Area Council, Inc. v. Board of Education*, 510 F.2d 1358 (6th Cir. 1974); *See also Newburg Area Council, Inc. v. Gordon*, 521 F.2d 578 (6th Cir. 1975); and (2) conflicts with this Court's desegregation order issued July 30, 1975, a plan which was and is necessary to dismantle an unconstitutional school system and to create a system compatible with the guarantees of the Fourteenth Amendment.

This holding is clearly correct. *North Carolina State Board of Education v. Swann*, 402 U.S. 43, 91 S.Ct. 1284, 28 L.Ed.2d 586 (1971); *Northcross v. Board of Education*, 489 F.2d 15, 18–19 (6th Cir. 1973), *cert. denied*, 416 U.S. 962, 94 S.Ct.

1982, 40 L.Ed.2d 313 (1974); *Bradley v. Milliken,* 433 F.2d 897 (6th Cir. 1970), and cases therein cited. We also affirm the holding of the district court that §§ 1 and 2 of House Bill 168 are unconstitutional for the reasons stated by the court in its memorandum opinion.

Judge Gordon further held that ⁋ 3 of § 3 of the statute is unconstitutional under § 51 of the Kentucky Constitution, by concession of the parties. He ruled that ⁋ 4 of § 3 is constitutional on its face, but added:

> If the Department of Education or the Jefferson County Board of Education attempted in the future to frustrate or cripple this court's order of July 30, 1975, by adoption of regulations or rules pursuant to this paragraph, the court could at that time, upon appropriate motion, strike down the offensive rule or regulation.

## II.

■ The State officials challenge the constitutionality of 20 U.S.C. §§ 1228 and 1652(a) and Public Law 94–94, 89 Stat. 468, § 315(b), which provide that federal funds may not be spent on busing to achieve desegregation, with certain limited exceptions. In his opinion in *Carroll v. Department of Health, Education and Welfare, supra,* 410 F.Supp. 234, 238–40, Judge Gordon ruled that these statutes are valid and constitutional.

The Secretary of Health, Education and Welfare asserts that there is no case or controversy on this issue in the present case because, irrespective of the three federal statutes under attack, no other federal statute would allow the spending of federal money on home-to-school busing in the present case. He points out that under the Emergency School Aid Act (ESAA), 20 U.S.C. §§ 1601–19, there are only twelve "authorized activities," on which ESAA money can be spent. It is stated that the Jefferson County school busing program could not qualify for federal funds under any of these twelve categories or any other statute. The Secretary asserts the three challenged federal statutes do not cause

any harm to the Jefferson County school system of the Commonwealth of Kentucky because "wiping them off the books would not free a single cent in federal funding for home-to-school transportation."

We agree with this contention. We therefore do not reach the issue of the constitutionality of the three federal statutes here challenged.

The decision of the district court holding unconstitutional §§ 1 and 2 and ⁋⁋ 1, 2 and 3 of § 3 of House Bill 168 is affirmed. The costs of this appeal are taxed against the appellants.

## APPENDIX

### GENERAL ASSEMBLY

Commonwealth of Kentucky

Regular Session 1976

### HOUSE BILL No. 168

[The following is the text of House Bill No. 168 as enacted by the General Assembly of the Commonwealth of Kentucky at the 1976 Regular Session and signed into law by Governor Julian Carroll on March 29, 1976.

Italicized matter represents language added to the indicated statutes by H.B. 168. Bracketed matter indicates deletions required by H.B. 168.]

An Act relating to the state financing of the transportation of public school students.

*Be it enacted by the General Assembly of the Commonwealth of Kentucky:*

Section 1. KRS 157A.090 is amended to read as follows:

(1) In determining the cost of the public common school foundation program for each district, the superintendent of public instruction shall determine the average cost per pupil per day of transporting pupils in districts having a similar density of transported pupils per square mile of area served by not less than nine different density groups.

(2) The annual cost of transportation shall include all current costs for each district plus annual depreciation of pupil transportation vehicles calculated in accordance with the regulations of the state board of education for such districts that operate district-owned vehicles.

(3) The aggregate and average attendance of transported pupils shall include all public common school pupils transported at public expense who live one mile or more from school, provided that handicapped pupils may be included who live less than this distance from school. The aggregate and average daily attendance referred to in this subsection shall be the aggregate and average daily attendance of transported pupils the prior year adjusted for current year increases in accordance with state board of education regulations.

(4) The state board of education, by regulation, shall determine the type of handicapped pupil that qualifies for special transportation to and from school. Those qualified pupils for which the district provides special transportation shall have their aggregate days attendance multiplied by 5.0 and added to that part of the district's aggregate days attendance that is multiplied by the district's adjusted cost per pupil per day in determining the district's pupil transportation program cost for allotment purposes.

(5) The square miles of area served by transportation shall be determined by subtracting from the total area in square miles of the district the area not served by transportation, determined in accordance with the regulations of the state board of education provided that if one district authorizes another district to provide transportation for a part of its area, such area served shall be deducted from the area served by that district and added to the area served by the district providing the transportation.

(6) The density of transported pupils per square mile of area served for each district shall be determined by dividing the average daily attendance of transported pupils by the number of square miles of area served by transportation.

(7) The superintendent of public instruction shall determine the average cost per pupil per day of transporting pupils in districts having a similar density by constructing a smoothed graph of cost for all density groups as provided in subsection (1) of this section. This graph shall be used to construct a scale showing the average costs of transportation for districts having a similar density of transported pupils. Such costs shall be determined separately for county school districts and independent school districts, provided that no independent school district will receive an average cost per pupil per day in excess of the minimum received by any county district or districts. These costs shall be the costs per pupil per day of transported pupils included in the foundation program and such costs shall be recalculated each year.

*(8) In constructing the smoothed graph required in subsection (7) of this section, this smoothed graph shall be extended indefinitely as a straight line at the same cost level per pupil per day from that point at the bottom of the graph indicated by the density group with the lowest cost per pupil per day.*

*(9) For transportation allotment purposes, those districts with a higher density and higher cost per pupil per day than the density group with the lowest cost per pupil per day shall not receive a transportation allotment cost higher than that indicated by the straight line part of the graph.*

*(10)* [(8)] The cost of transporting a district's pupils from the parent school to a state vocational-technical or to a vocational education center shall be calculated separately from the calculation required by subsections (1) through *(10)* [(8)] of this section. The amount calculated shall be paid separately to each district from public common school foundations program funds budgeted for vocational pupil transportation, as a reimbursement based on the district's cost for providing this service. The amount of reimbursement shall be calculated in accordance with state board of education regulations. In the event that the appropriation for vocational pupil transportation in the biennial budget is insufficient to meet the

total calculated cost of this service for all districts, the amount paid to each district shall be ratably reduced. For the purpose of this subsection, the parent school shall be interpreted to mean that school in which the pupil is officially enrolled in a district's public common school system.

Section 2. KRS 157.370 is amended to read as follows:

(1) In determining the cost of the foundation program for each district, the superintendent of public instruction shall determine the average cost per pupil per day of transporting pupils in districts having a similar density of transported pupils per square mile of area served by not less than nine different density groups.

(2) The annual cost of transportation shall include all current costs for each district plus annual depreciation of pupil transportation vehicles calculated in accordance with the regulations of the state board of education for such districts that operate district-owned vehicles.

(3) The aggregate and average daily attendance of transported pupils shall include all public school pupils transported at public expense who live one mile or more from school, provided that handicapped children may be included who live less than this distance from school. The aggregate and average daily attendance referred to in this subsection shall be the aggregate and average daily attendance of transported pupils the prior year adjusted for current year increases in accordance with state board of education regulations.

(4) The square miles of area served by transportation shall be determined by subtracting from the total area in square miles of the district the area not served by transportation, determined in accordance with the regulations of the state board of education provided that if one district authorizes another district to provide transportation for a part of its area, such area served shall be deducted from the area served by that district and added to the area served by the district providing the transportation.

(5) The density of transported pupils per square mile of area served for each district shall be determined by dividing the average daily attendance of transported pupils by the number of square miles of area served by transportation.

(6) The superintendent of public instruction shall determine the average cost per pupil per day of transporting pupils in districts having a similar density by constructing a smoothed graph of cost for all density groups as provided in subsection (1). This graph shall be used to construct a scale showing the average cost of transportation for districts having a similar density of transported pupils. Such costs shall be determined separately for county school districts and independent school districts, provided that no independent school district will receive an average cost per pupil per day in excess of the minimum received by any county district or districts. These costs shall be the costs per pupil per day of transported pupils included in the foundation program and such costs shall be recalculated each biennium.

(7) The scale of transportation costs included in the foundation program for county and independent districts is determined in accordance with the provisions in KRS 157.310 to 157.440 for the biennium beginning July 1, 1960.

(8) In constructing the smoothed graph required in subsection (6) of this section, this smoothed graph shall be extended indefinitely as a straight line at the same cost level per pupil per day from that point at the bottom of the graph indicated by the density group with the lowest cost per pupil per day.

(9) For transportation allotment purposes, those districts with a higher density and higher cost per pupil per day than the density group with the lowest cost per pupil per day shall not receive a transportation allotment cost higher than that indicated by the straight line part of the graph.

*(10)* [(8)] The cost of transporting a district's pupils from the parent school to a state vocational-technical school or to a vocational educational center shall be calculated separately from the calculation required by sections (1) through *(9)* [(7)] of this section. The amount calculated shall be paid separately to each district from minimum foundation program funds budgeted for vocation pupil transportation, as a reimbursement based on the district's cost for providing this service. The amount of reimbursement shall be calculated in accordance with state board of education regulations. In the event that the appropriation for vocational pupil transportation in the biennial budget is insufficient to meet the total calculated cost of this service for all districts, the amount paid to each district shall be ratably reduced. For the purpose of this subsection, the parent school shall be interpreted to mean that school in which the pupil is officially enrolled in a district's public common school system.

*(11)* [(9)] The state board of education, by regulation, shall determine the type of handicapped pupil that qualifies for special type transportation to and from school. Those qualified pupils for which the district provides special type transportation shall have their aggregate days attendance multiplied by 5.0 and added to that part of the district's aggregate days attendance that is multiplied by the district's adjusted cost per pupil per day in determining the district's pupil transportation program cost for allotment purposes.

Section 3. KRS 158.110 is amended to read as follows:

*(1)* Boards of education *may provide* [shall furnish] transportation from their general funds or otherwise for *any* pupil[s] of *any* [elementary] grade *to the nearest school to said pupils residence within the district* who *does* [do] not *live* [reside] within a reasonable walking distance *to such nearest* [of the] school *of appropriate grade level* [provided for them, and any board of education may provide transportation from its general funds or otherwise for any pupil of any grade who does not live within a reasonable walking distance from the school provided for him. The boards of education shall adopt such rules and regulations as will insure the comfort, health and safety of the children who are transported, consistent with the rules and regulations of the state board of education dealing with the transportation of pupils].

*(2) When space is not available at the nearest school, boards of education may provide transportation from their general funds or otherwise for any pupil of any grade who does not live within a reasonable walking distance to the nearest school of appropriate grade level where space is available.*

*(3) Public elementary and secondary schools shall not change their present grade level structure without written permission from the state board of education.*

*(4) The boards of education shall adopt such rules and regulations as will insure the comfort, health and safety of the children who are transported, consistent with the rules and regulations of the state board of education dealing with the transportation of pupils.*

Section 4. Whereas the allocation for the current school year of funds for transportation is imminent, an emergency is declared to exist, and this Act shall become effective upon passage and approval by the Governor.