Flaherty v. Cunningham                CV-93-216-B    09/02/94
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF NEW HAMPSHIRE


Thomas Flaherty, et al.

    v.                                    Civil No. 93-216-B

Michael Cunningham, et al.


                          **O R D E R**

    Seven New Hampshire State Prison inmates bring this civil

rights action challenging the conditions of their confinement in

the prison's Secure Housing Unit ("SHU").[1]  The inmates allege

that the Warden and the Administrator of Prison Security have:

(i) screened off the passive fresh air vents in the SHU dayrooms,

exacerbating problems caused by an inadequate active ventilation

system; and (ii) stopped providing SHU inmates with raw sugar,

fresh fruit and fruit juice, which they contend are necessary

components of a nutritionally adequate diet.  The inmates claim

that the poor ventilation and inadequate diet violate their

_____

    [1]The original plaintiffs are Thomas Flaherty, Matthew
O'Brien, Bruce Newcomb, Russell Adjutant, Craig Campbell.  Robert
Caron and Richard Papineau have recently been added in a third
amended complaint. All of the plaintiffs except O'Brien and
Adjutant allege ventilation and fruit juice claims under the
federal and state provisions listed above.  O'Brien and Adjutant
did not timely object to Magistrate Judge Barry's recommended
dismissal of their fruit and fruit juice claims, and I do not
address them again here.

rights under the First, Eighth and Fourteenth Amendments, the New

Hampshire Constitution and the Laaman consent decree. They seek equitable relief and damages. Presently before me are the parties' cross-motions for summary judgment.

## I. FACTS[2]

### A. Ventilation

The inmates complain generally that the air in the SHU is "not recycled with fresh outside air, once a day, once an hour, or once a min[ute]." Their suit, however, largely addresses specific problems with the ventilation in their cells and in the SHU dayrooms. Regarding their cells, the inmates state that the air vents function "irregularly at best", and that the air that does enter the cells is laden with dust and debris. They consequently must wet-mop the cell walls and floors once a day. Moreover, the dust and debris cause sneezing, eye irritation and general discomfort.

---

[2]To support their claim, the inmates rely almost exclusively on their verified complaint. I treat the factual statements alleged therein as "fully tantamount to a counter-affidavit" to the extent that these statements are not conclusory and come within the inmates' personal knowledge. See Sheinkopf v. Stone, 927 F.2d 1259, 1262-63 (1st Cir. 1991). Where noted, I have also included undisputed facts and facts from the defendants' affidavits and submissions that are necessary to describe the factual basis for their position.

3

The inmates state that there are similar problems with the dayrooms' ventilation. Prior to November 1991, passive air vents at the bottom of each dayroom's five windows alleviated some of these problems. In November 1991, however, the prison bolted heavy steel screens to the outside of the window vents.[3] According to the SHU manager, the screens were part of a recent unit retrofit (inmates had previously destroyed the original screens), and the heavier gauge was necessary to "prevent residents from passing contraband between upper and lower tiers using a 'string elevator.'"

The manager contends that the screens still allow fresh air to flow inside the dayroom. The inmates, however, counter that the screens "virtually cut[] off all fresh outside air supply." Now that the vents have been equipped with the new steel screens, the inmates allege that the dayrooms "have a mildew foul smell and heavy hard to breath air at all times and was extremely hot and humid year round." The inmates claim that, "because of the poor air quality and quantity in SHU, [they have] suffered bloody noses, difficulty in breathing, insomnia, anxiety, depression,

---

[3]Plaintiffs sometimes refer to these screens as steel panels. However, they do not challenge defendants' affiant, who states that heavy steel screens were bolted to the outside of the windows and passive air vents.

4

lack of energy and vitality . . . ."

In April 1992, several months after the screens were put in place, the Department of Public Health inspected the SHU in response to complaints similar to those alleged by the inmates here. The Department found that these "concerns were mostly thermal comfort and housekeeping in nature." Specifically, the report stated that adequate amounts of fresh air were entering the SHU; that the carbon monoxide and relative humidity in the SHU were generally within recommended levels but slightly above so in the dayrooms; and that discomfort could be minimized by continued regular maintenance and by preventing inmates from blocking the air vents in their cells.

B.   **Fresh Fruit and Fruit Juice**

SHU inmates have not been served raw sugar, fresh fruit or fruit juice with their meals since October 1992. According to the SHU manager, these restrictions were put in place because batches of fermented "home brew" had been found in the SHU on numerous occasions. In one instance, a group of intoxicated inmates caused a disturbance in a SHU dayroom. They attempted to break windows, fought with corrections officers, and some received minor injuries. At present, SHU inmates "receive a

5

Tang-type beverage which has vitamins, including vitamin C, but cannot be fermented."[4]

Plaintiffs admit that home brew is a problem, but contend similar problems are occurring in other, less secure areas of the prison and prison officials have not deprived these inmates of fresh fruit or sugar. Moreover, they claim that they "are not receiving adequate nutrition due to the lack of certain minerals and vitamins that can only be derived from the ingestion of fresh fruit and juice." As a result, they "are experiencing lack of energy, skin discolor, dark circles around the eyes, inability to sleep or rest properly, irritability and discomfort . . . ."

---

[4]The manager also states that all prison menus are reviewed by a prison dietitian, and that where the prison menu calls for fresh fruit, a vegetable substitute is provided. The inmates contest the adequacy of these substitutions.

## II. <u>DISCUSSION</u>[5]

The inmates claim that the air quality and diet in the SHU violate their rights under the First, Eighth and Fourteenth Amendments, the New Hampshire Constitution and the <u>Laaman</u> consent decree.  I address the inmates' Eighth Amendment claim first.

### A.    <u>Eighth Amendment</u>

The inmates contend that the poor air quality and diet in the SHU constitute cruel and unusual punishment.  This claim has two required components.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  First, the inmates must establish that a "sufficiently serious" deprivation has occurred.  <u>Id.</u>  Where, as here, inmates challenge certain conditions of their confinement, "only those

---

[5]I judge the State's motion against the following standard. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The burden is upon the moving party to establish the lack of a genuine, material, factual issue, <u>Finn v. Consolidated Rail Corp.</u>, 782 F.2d 13, 15 (1st Cir. 1986), and the court must view the record in the light most favorable to the non-movant, according the non-movant all beneficial inferences discernable from the evidence. <u>Oliver v. Digital Equipment Corp.</u>, 846 F.2d 103, 105 (1st Cir. 1988).  If a motion for summary judgment is properly supported, the burden shifts to the non-movant to show that a genuine issue exists.  <u>Donovan v. Agnew</u>, 712 F.2d 1509, 1516 (1st Cir. 1983).

deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to form the basis for an Eighth Amendment violation. Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)); Hudson v. McMillian, 112 S. Ct. 995, 1000 (1992). Second, the inmates must establish that defendants acted with a sufficiently culpable state of mind. Conditions of confinement cases require "deliberate indifference," Wilson, 501 U.S. at 303, which the Supreme Court has recently defined as knowing disregard of an excessive risk to inmate health and safety. Farmer v. Brennan, 114 S. Ct. 1970, 1979 (1994).

Here, the inmates' claims fail because they have not averred sufficient facts to support their claim that defendants' conduct was harmful enough to deprive them of life's basic necessities. Wilson, 501 U.S. at 303; Hudson, 112 S. Ct. at 1000. The inmates state that, as a result of the poor air quality and lack of fresh fruit, they have suffered "bloody noses, difficulty in breathing, insomnia, anxiety, depression, lack of energy and vitality[,]" "skin discolor, dark circles around the eyes, inability to sleep or rest properly, irritability and discomfort from irritated bowels . . . ." Undoubtedly, "bloody noses" and "difficulty breathing" may in some circumstances be sufficiently severe to satisfy the objective component of the Eighth Amendment.

8

However, the inmates have failed to provide any details of the frequency, duration or severity of these symptoms -- necessary facts which are particularly within their knowledge. See Street v. Fair, 918 F.2d 269, 272 (1st Cir. 1990) (inmate must present sufficient facts to confirm seriousness of harm). None of the inmates allege that they have sought medical care or attention for their symptoms, although the complained-of conditions allegedly have existed for some time. Finally, the inmates have neither alleged nor produced facts indicating that their conditions will worsen significantly in the near future. See Helling v. McKinney, 113 S. Ct. 2475, 2481 (1993) (inmate may establish Eighth Amendment violation by showing that challenged prison condition poses an "unreasonable risk of serious damage to his future health").[6]

_____

[6]I have reviewed de novo plaintiffs' request that I appoint experts to assist them in prosecuting their complaint. Fed. R. Evid. 706 plainly gives me the authority to appoint expert witnesses. However, I am not obligated to do so in cases where no benefit would be served by the expert's testimony. See Jack B. Weinstein & Margaret A. Burger, Weinstein's Evidence 706[02], at 706-17 (1993). Here, plaintiffs have not even made a threshold showing that they are presently suffering serious health effects as a result of defendants' actions. Nor have they averred that they will suffer such health effects in the future if remedial measures are not taken. Without such evidence and allegations, no point would be served by appointing experts to respond to defendants' contentions that plaintiffs' diet and air quality are adequate to meet their basic needs. Accordingly, I

The inmates' allegations at best establish that conditions in the SHU are somewhat unpleasant. While I do not diminish the importance of adequate amounts of fresh air and a nutritious diet, harsh conditions and routine discomfort that are not so severe as to pose a serious threat to an inmate's health are "part of the penalty that criminal offenders pay for their offenses against society." Wilson, at 2324 (quoting Rhodes at 347). Because the inmates have not produced evidence of a sufficiently extreme deprivation, I grant defendants' motion for summary judgment on their Eighth Amendment claims.

## B. Additional Federal Claims Raised by Complaint

The inmates raise several additional federal claims which warrant only summary discussion.

First, the inmates claim that the changes in air quality and diet violate their Fourteenth Amendment "due process" rights. By

---

deny plaintiffs' request for the appointment of experts.

Plaintiffs' claimed need for additional discovery fails for the same reason. See Resolution Trust Co. v. Northbridge Associates, Inc., 22 F.3d 1198, 1207 (1st Cir. 1994) (to satisfy Fed. R. Civ. P. 56(F)'s materiality requirement, movant must demonstrate that "the facts the movant seeks to discover [are] . . . foreseeably capable of breathing life into his claim or defense").

10

due process, the inmates apparently refer to their substantive rights. The substantive due process clause, however, affords convicted prisoners no greater protection from oppressive confinement conditions than does the Eighth Amendment. Clemmons v. Bohannon, 918 F.2d 858, 869 (10th Cir. 1990); see also, Graham v. Conner, 490 U.S. 386, 395 n.10 (1989); Whitley v. Albers, 475 U.S. 312, 327 (1986); Unwin v. Campbell, 863 F.2d 124, 127 n.1 (1st Cir. 1988). I therefore grant summary judgment to defendants on this claim for the reasons stated in Section II.A supra.

Second, the inmates allege that defendants violated their Fourteenth Amendment right to equal protection because other prison units have not been deprived of fresh fruit and fruit juice. However, prison officials confronted with an equal protection claim "need only demonstrate a rational basis for their distinctions between organizational groups," Jones v. North Carolina Prisoners' Labor Union Inc., 433 U.S. 119, 134 (1977), such as "administrative convenience, expense or security." Green v. McKaskle, 788 F.2d 1116, 1125 (5th Cir. 1986). See, e.g., Nadeau v. Helgemoe, 561 F.2d 411, 416 (1st Cir. 1977). Here, the defendants have produced affidavits indicating that the challenged dietary substitutions were made

11

after numerous caches of home brew were discovered and a violent disturbance was caused by intoxicated inmates. While the inmates contend that similar measures have not been taken in other, less supervised prison units, this fact does not render defendants' response irrational.

Third, in their most recent amended complaint, the inmates claim that defendants have violated their First Amendment rights. The inmates do not allege that their free speech rights have been impinged upon; rather, they contend that, because poor air quality deters them from spending their recreation periods in the SHU dayrooms, defendants violated their constitutional right to freely associate with other inmates. Prison inmates, however, "have no first amendment right 'to simple physical association.'" Long v. Norris, 929 F.2d 1111, 1118 (6th Cir. 1991) (quoting Thorne v. Jones, 765 F.2d 1270, 1274 (5th Cir. 1985)). As plaintiffs' aver nothing more, I grant defendants summary judgment on this claim as well.

Finally, the inmates allege that defendants' actions violate the Laaman consent decree, a federal decree under which the New Hampshire State Prison operates. The First Circuit, however, has repeatedly held that a § 1983 suit is not an appropriate means of enforcing a consent decree. Instead, the complainant must bring

12

"an action for contempt . . . before the court responsible for the decree," Martel v. Fridovich, 14 F.3d 1, 3 n.4 (1st Cir. 1993), which in this case is Senior Judge Devine.  I therefore dismiss this claim without prejudice to the inmates' refiling it in the appropriate manner before the appropriate court.[7]

C.   **Pendent State Claims**

Having dismissed the inmates' federal claims, I decline to exercise my discretion to retain supplemental jurisdiction over their remaining state law claims.  See 28 U.S.C. § 1367(c)(3). Accordingly, I dismiss these claims without prejudice.

### III.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (document no. 33) is granted with respect to plaintiffs'

---

[7]Plaintiffs also argue that defendants' decision to place new screens on the day room's window vents fails the test outlined in Turner v. Safley, 482 U.S. 78, 89 (1987) because it was not "reasonably related to legitimate penological interests." In making this argument, plaintiffs overlook the fact that Turner's legitimate penological interest test must be satisfied only if the challenged practice otherwise impinges on an inmate's constitutional rights.  Since plaintiffs do not have a triable case with respect to any of their constitutional claims, I need not consider whether the installation of the new screens served a legitimate penological interest.

13

First, Eighth and Fourteenth Amendments claims.  Plaintiffs'

consent decree and state law claims are dismissed without

prejudice.[8]

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

September 2, 1994

cc:  Thomas Flaherty, pro se
     Matthew O'Brien, pro se
     Bruce Newcomb, pro se
     Russell Adjutant, pro se
     Craig Campbell, pro se
     Robert Caron, pro se
     Richard Papineau, pro se
     William McCallum, Esq.

_____

[8]The inmates' motions for summary judgment (document nos. 43 and 46) and motions to strike and/or deny defendants motion for summary judgment (document nos. 34, 36, 40, 41) are denied.  As suggested in footnote 6, _infra_, I deny plaintiffs' motion to appoint expert witness (document nos. 52 and 56) after _de novo_ review.  The inmates also apparently have outstanding objections to Magistrate Barry's denial of their requests for appointed counsel (document nos. 7, 9, & 12) and withdrawal of defendants' admissions (document nos. 53, 54, 55).  I considered these objections before reaching the merits of defendants' summary judgment motion, and found them to be meritless.  They are denied.

14