UNITED STATES of America, Plaintiff,

v.

Hector BIENVENIDO de-la-ROSA BASI-LIO and Maritza de-la-Cruz-Marquez, Defendants.

Crim. No. 87–0737CC.

United States District Court,
D. Puerto Rico.

March 11, 1988.

Daniel F. Lopez–Roma, U.S. Atty., José A. Quiles, Asst. U.S. Atty., Chief, Crim. Div., and Carlos A. Perez, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Raymond Rivera–Esteves, Lomas Verdes, Bayamón, P.R., for de-la-Rosa-Basilio.

Ramonita Dieppa–González, Caguas, P.R., for de-la-Cruz-Marquez.

## OPINION AND ORDER

CEREZO, District Judge.

The Court has before it motions for judgment of acquittal made by both defendants at the close of the evidence offered by the government under Rule 29(a), Federal Rules of Criminal Procedure.

The two defendants are charged with violating 8 U.S.C. Section 1324(a)(1)(B) which provides that:

Any person who—

knowingly or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law, shall be fined in accordance with Title 18, or imprisoned not more than five years, or both.

Both counts of the indictment are identical, except for the time period. The indictment charges that the defendants, knowing or in reckless disregard of the fact that an alien had entered the United States in violation of law, willfully and unlawfully transported him in a taxi in furtherance of such violation.

The undisputed evidence presented by the government establishes that one Miguel López–Ovalle, a Dominican national, entered the United States illegally through Aguadilla, Puerto Rico on July 11, 1985 and that during the month of October 1987, he voluntarily contacted the Immigration and Naturalization Service to offer his services as an informant. At that time, his wife—also an illegal alien—worked as an informant for the Immigration and Naturalization Service. It was she who took him to that agency. Searching for cases to bring to the agency in his capacity of informer, he targeted his close friend and co-worker Héctor Bienvenido de-la Rosa-Basilio, also known as Radamés, as well as the latter's wife Maritza de-la-Cruz-Márquez who was also his friend. Both defendants knew he had been residing in Puerto Rico for an extended period of time.

Special Agent Humberto Rocafort, testified at trial that López–Ovalle is a registered informant for the Immigration and Naturalization Service. He also referred to López–Ovalle as a "cooperating private individual." Immigration officials were fully aware that he had entered the United States well over two years earlier. In the exercise of its discretion, the Immigration and Naturalization Service issued the first of several form letters granting López–Ovalle what Special Agent Rocafort referred to as thirty-day extensions of stay and employment authorizations.

This informant did not receive any compensation other than the sum of $100 which was given to him to pay his rent during December 1987 at which time he was unemployed. Special Agent Rocafort stated during cross-examination that:[1] "while he was processed as a detainee, he had the right to work and remain in this country" and that "we can give thirty-day extensions and six-month extensions if we want to, and while he stays, he does so in accordance with the law. He is not in violation of the law."

He further stated during cross-examination, referring to López–Ovalle that: "He has a right to stay, we gave him that right; as long as he gets cases and testifies in court, he will stay. Informants are hard to get."

Defendants base their Rule 29 motions on the contention that the first essential element of the offense charged was not proven by the government. They specifically claim that since López–Ovalle, the alien mentioned in the indictment, had been authorized by Immigration and Naturalization Service officials themselves to remain in the United States during specific time periods, and that authorization was in effect between December 2 and December 21, 1987, the dates charged in the indictment, he was not an "illegal alien" at such time.

The statute in question contemplates three modes of violation by the alien who is transported within the United States. That is, the defendants could be charged under 8 U.S.C. Section 1324(a)(1)(B) if the alien which they transported had: (1) come to the United States illegally, (2) entered the United States illegally, or (3) remained in the United States illegally.

These defendants are specifically charged with transporting an alien who had *entered* the United States illegally. Obviously, they could not be charged with transporting an alien who had *remained* illegally in the United States because at the time of the acts charged in the indictment, the alien López–Ovalle, according to the Immigration and Naturalization Service agent's own admission, had been *authorized* to remain in the United States. The form I-210 places no restrictions on his stay in the United States whatsoever and specifically authorizes him to work. All it requires is voluntary departure at the end of thirty-day periods which have been extended since November 12, 1987 and which will continue to be extended as long as the alien/informant, is useful to the Immigration and Naturalization Service.

Thus, although his entry in 1985 was illegal, there was a subsequent accommoda-

---

1. These are not verbatim quotes. They represent, however, with substantial accuracy Mr. Rocafort's statements on this subject which were taken from the trial notes of the undersigned.

tion in his status when he became an informant for the Immigration and Naturalization Service and his presence in the United States was authorized, by the agency itself, if only for specific time periods.

Going back to the charge contained in the indictment which stems from López–Ovalle's *initial illegal entry*, and the defendant's acts in furtherance of such entry, we find that the evidence presented does not establish that the defendants' transportation of this alien, notwithstanding their fraudulent scheme, was carried out "in furtherance of" the alien's violation of law. The purpose of the intended trip from San Juan to New York in no way was undertaken to further the alien's illegal entry. It was undertaken instead, as the informant admitted, to gather evidence to support a case which he had brought to the Immigration and Naturalization Service.

Although López–Ovalle had learned earlier from the defendants that they were in the business of transporting illegal aliens to the continental United States, all of the actions and interactions undertaken by defendants and the informant in developing the scheme to transport him to New York occurred after the alien became an informant. López–Ovalle testified that he decided to work with the Immigration and Naturalization Service in the investigation of this case and that "the case would be developed by using himself as the instrument." He also said: "I was going to be the person to be smuggled into the United States. I accepted using a Nagra and that the telephone conversations between myself and the defendants be recorded." The money for the plane tickets and to pay the "connections" was provided by the Immigration and Naturalization Service. The alien did all this not to further his illegal entry, but rather, to secure his position as an informant which would result in the extension of his authorized stay.

■ Defendants' criminal intention, which has been shown, is only one element

of the case. The fact remains, however, that in reality, the transportation provided by them had nothing to do with the aliens' violation of law. Willful transportation of illegal aliens is not *per se* a violation of the statute, for the law proscribes such conduct *only* when it furthers the aliens' unlawful presence, or, as in this case, entry. *United States v. Merkt,* 794 F.2d 950 at 965 (5th Cir.1986).

■ The informant could certainly, in his work as such, alert the Immigration and Naturalization Service to the illegal transportation of third parties [2] but he cannot himself be simultaneously transported in furtherance of a government-sanctioned investigation and in furtherance of a violation of law. We find these purposes incompatible and to allow otherwise would be to create a legal fiction. It is, therefore, our conclusion that the government has failed to prove the third element of the offense charged which requires that the transportation be in furtherance of the violation of law by the alien. The Rule 29 motions are GRANTED as to both defendants. Judgments of acquittal will be entered.

SO ORDERED.

---

**2.** That was precisely the situation in *United States v. Morales–Quiñones,* 812 F.2d 604 (10th Cir.1987) where the alien who was an informant alerted the Immigration agent that the two defendants were willing to transport her and her family to the United States and agreed with the Immigration and Naturalization agent that he would pay the smuggler money to transport them. The indictment charged the two defendants in four counts. Each count named a transported alien. However, the alien/informant herself was not named in any of the counts.