UNITED STATES of America, Appellee,

v.

Jose A. MEDINA–GARCIA,
Defendant, Appellant.

No. 88–2206.

United States Court of Appeals,
First Circuit.

Heard Sept. 6, 1990.
Decided Nov. 5, 1990.

---

Benito I. Rodríguez–Massó, for defendant, appellant.

Jeanette Mercado–Ríos, Asst. U.S. Atty., with whom Daniel F. López–Romo, U.S. Atty., and Antonio R. Bazán, Asst. U.S. Atty., were on brief, for appellee.

Before BREYER, Chief Judge, TORRUELLA, Circuit Judge, and VAN GRAAFEILAND,* Senior Circuit Judge.

TORRUELLA, Circuit Judge.

Defendant–Appellant José Medina–García was convicted by jury verdict in the United States District Court for the District of Puerto Rico of conspiracy, attempt and the substantive crime of knowingly, willfully and unlawfully transporting or moving within the United States an alien who entered the United States in violation of law. On appeal is the district court's final judgment. The issue raised is the district court's denial of appellant's motion for judgment of acquittal. For the reasons stated below, we reverse in part and affirm in part.

## I. BACKGROUND

Defendant was arrested in 1987 on charges of violating 18 U.S.C. § 371; 18 U.S.C. § 2; 8 U.S.C. § 1324(a)(1)(B); and 18 U.S.C. §§ 912 and 1114. He was convicted on three counts: (1) conspiring with codefendant, Juan Rivera–Mercado, to transport and move, within the United States, two illegal aliens, Benigno Hernández–Fana and Ana Luisa Hernández–Cepeda in violation of 18 U.S.C. § 371 (Count 1); (2) attempting to transport and move, within the United States, illegal alien Hernández–Fana in violation of 18 U.S.C. § 2 and 8

* Of the Second Circuit, sitting by designation.

U.S.C. § 1324(a)(1)(B) (Count 2); and (3) transporting and moving, within the United States, illegal alien Hernández–Fana in violation of 18 U.S.C. § 2 and 8 U.S.C. § 1324(a)(1)(B) (Count 3). One count charging defendant with willfully, knowingly and unlawfully transporting illegal alien Ana Luisa Hernández–Cepeda in violation of 18 U.S.C. § 2 and 8 U.S.C. § 1324(a)(1)(B) (Count 4) was dismissed, along with another count charging defendant with willfully, knowingly and falsely pretending to be an officer and employee of the United States acting under the authority of the United States Immigration and Naturalization Service ("INS") in violation of 18 U.S.C. §§ 912 and 1114 (Count 6). The jury returned a verdict of "not guilty" on a second count charging defendant with a similar offense of willfully, knowingly and falsely pretending to be an officer and employee of the United States acting under the authority of the INS in violation of 18 U.S.C. §§ 912 and 1114 (Count 5).

## II. FACTS

Juan Rivera–Mercado, codefendant at trial, was first approached by Rafael Ferreira–González, an alien informant acting under the direction of INS agent Clifford Foy, in September 1987. Ferreira–González informed Rivera–Mercado that he "needed to pass two or three persons into the United States who were illegally [in Puerto Rico]." Rivera–Mercado responded that he dealt in "that" and charged $300.00 per person. Rivera–Mercado contacted the defendant, who was then working as a Municipal Police Officer with the Municipality of Carolina, Puerto Rico, and introduced him to Ferreira–González. Defendant was recruited to drive the aliens to the San Juan airport and see that they were boarded on a plane to New York. The aliens scheduled to be transported were Ana Luisa Hernández–Cepeda and Benigno Hernández–Fana, Dominican nationals acting in cooperation with the INS and Agent Foy.

In exchange for their services, both Hernández–Cepeda and Hernández–Fana were permitted to remain in the United States without fear of prosecution. Hernández–Cepeda began working as an informant two and a half years before working on this case. Upon her initial acceptance as an informant, she was issued a 30–day parole letter (Form I–210), which was renewed monthly thereafter, allowing her to remain and work legally in the United States.

As a result of internal policy changes, Hernández–Fana did not automatically receive a 30–day parole letter upon initial acceptance as an informant in 1987. At that time, Hernández–Fana was instructed that he must first prove himself to be a trustworthy informant before receiving a parole letter. He was, however, internally processed and allowed to remain in the United States while cooperating with the INS. (Hernández–Fana was, in fact, issued a 30–day parole letter in January, 1988 following a determination by the INS that his work on this case had been satisfactory.).

On October 26, 1987, Hernández–Cepeda and Hernández–Fana were picked up by the defendant at the home of Rafael González and driven to the San Juan airport. At the airport, defendant checked some luggage for Hernández–Cepeda, gave both Hernández–Cepeda and Hernández–Fana airline tickets to New York, and left the two informants sitting in the Eastern Airlines waiting area where they were later retrieved by Agent Foy. Neither Hernández–Cepeda nor Hernández–Fana ever had any intention of actually travelling to New York. Their sole purpose was to "catch" Rivera–Mercado and the defendant.

As a result of these activities, defendant and Rivera–Mercado were subsequently arrested and charged with the crimes enumerated above. The jury returned a "guilty" verdict on three counts against defendant, and defendant moved for judgment of acquittal pursuant to Rule 29, Federal Rules of Criminal Procedure. The district court denied that motion. After final judgment was entered, defendant appealed.

## III. STANDARD OF REVIEW

A district court's denial of defendant's motion for judgment of acquittal

under Rule 29 will be reversed if a rational trier of fact could not have concluded that every essential element of the crime charged was proven beyond a reasonable doubt. In so determining, this court considers the evidence as a whole taken in the light most favorable to the government together with all legitimate inferences. It is not the role of this court, however, to assess the credibility of the witnesses. Fed.R.Cr.P. Rule 29; *United States v. Torres López*, 851 F.2d 520, 527 (1st Cir. 1988), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989).

## IV. DISCUSSION

The contested issue in this case is the status of the aliens involved and whether defendant could be convicted of the crimes as charged. The Government contends that an alien enjoying parole status, or the factual equivalent thereof, is nevertheless remaining illegally in the United States and should be treated no differently than an alien upon initial illegal entry. Therefore, defendant was transporting illegal aliens. Because we do not accept that premise, we find that the defendant could not be convicted of the substantive crime as charged. The fact that the aliens were remaining legally in the United States, however, is no bar to conviction for conspiracy and attempt.

### A. *Immigration Status*

■ The Government urges this Court to adopt the reasoning of the Fifth Circuit in *Delgado–Carrera v. INS*, 773 F.2d 629 (5th Cir.1985) which states that a Form I–210 30–day parole does not alter the status of an alien having illegally entered the United States and therefore "[a] paroled alien is ... not deemed to be within the United States and is subject to exclusion just as if [the alien] were initially appearing at the border seeking entry." *Id.* at 632. *See also United States v. Alvarado–Machado*, 867 F.2d 209, 212 (5th Cir.1989).

This court cannot accept the Government's position. If an alien holding a 30–day parole letter is permitted to remain and work in the United States without fear of prosecution, then to hold that, for purposes of prosecution under 8 U.S.C. § 1324(a)(1)(B), the very same alien is *not* remaining legally in the United States would be to create a "legal fiction," *United States v. Bienvenido de la Rosa–Basilio*, 682 F.Supp. 13 (D.P.R.1988), which we cannot accept.

Our interpretation of the meaning of "parole" status is, moreover, also the interpretation that has been adopted by the INS. Both the agent involved in the *Bienvenido* case and Agent Foy here, when questioned, stated that a 30–day parole gives an alien the right to remain and work in the United States without being in violation of law. *See, id.* at 14.

For purposes of determining the immigration status of informant Hernández–Fana, we find it a mere formality that he had not yet received an official Form I–210 parole letter. The INS nevertheless allowed him to remain in the United States without fear of prosecution the same as if he had been officially paroled. Thus we find that Hernández–Fana was enjoying *de facto*, if not *de jure*, parole status at the time of his involvement with defendant.

### B. *The Substantive Crime*

The statute under which defendant was charged and convicted in this case provides that

(1) Any person who—
(B) knowing or in reckless disregard of the fact that an alien has come to, entered or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law;

.    .    .    .    .

shall be fined in accordance with Title 18, or imprisoned not more than five years, or both, for each alien in respect to whom any violation of this paragraph occurs.

8 U.S.C. § 1324(a)(1)(B).

"To establish a violation of 8 U.S.C. § 1324(a)(1)(B), the government must prove

that the defendant acted willfully in furtherance of the alien's violation of the law ... [T]here must be a direct and substantial relationship between the transportation and its furtherance of the alien's presence in the United States ... Willful transportation of illegal aliens is not, per se, a violation of the statute, for the law proscribes such conduct only when it is in furtherance of the alien's unlawful presence." *United States v. Morales–Rosales*, 838 F.2d 1359 (5th Cir.1988). Thus "the aliens' status is an element of the crime of transporting illegal aliens." *Alvarado–Machado*, 867 F.2d at 212.

The illegal act committed by alien informant Hernández–Fana was *entering* the United States illegally. Once Hernández–Fana became an informant for the INS and was granted *de facto* parole status, it may no longer be said that he was committing the act of "entering." The effect of parole status is to reclassify an alien from one who is illegally remaining in the United States to one who is legally remaining in the United States regardless of how entry into the United States was effected. Thus, in order for defendant to have been acting in furtherance of Hernández–Fana's violation of law, defendant would have had to move Hernández–Fana within the United States in aid of his initial illegal entry. Since such was not the case at hand, it cannot be said that the defendant committed any act in violation of 8 U.S.C. § 1324(a)(1)(B).

## C. *Conspiracy*

The indictment under which defendant was convicted of conspiracy charged defendant with "conspiring to knowingly, willfully and unlawfully transport or attempt to transport aliens who *entered* the United States in violation of law." Although defendant was, in actuality, conspiring to transport aliens who he believed were *remaining* in the United States in violation of law, the fact that the indictment used the term "entered" rather than "remained" is not a fatal flaw. "The sufficiency of an indictment [should] be determined on the basis of practical rather than technical consideration ... [H]air splitting is to be es-

chewed." *United States v. Moore*, 556 F.2d 479, 483 (10th Cir.1977). The true issue is whether defendant was sufficiently informed of the charges against him so that he could plead double jeopardy in any future prosecutions for the same offense. *United States v. Yonn*, 702 F.2d 1341, 1348 (11th Cir.1983).

In the case at hand, defendant was aware that he was being prosecuted for activities surrounding the transportation of Hernández–Fana and Hernández–Cepeda. There could have been no doubt in defendant's mind as to which activities the indictment referred.

■ The fact that both aliens were acting as INS informants and neither alien was remaining illegally in the United States at the time of defendant's involvement in this case does not prevent defendant from being prosecuted for conspiracy. "[T]he crime of conspiracy ... is complete upon the agreement to do an unlawful act as implemented by one or more overt acts. Factual impossibility is no defense." *United States v. Giry*, 818 F.2d 120, 126 (1st Cir.1987). This rule applies "even when the reason for the impossibility is that certain acts essential to the conspiracy's success are to be carried out by individuals who turn out to be government agents." *Id.*

## D. *Attempt*

The indictment charging defendant with attempt was not defective for the same reasons as stated above regarding conspiracy. Likewise, neither is factual impossibility a defense to a charge of attempt. "The criminal intention to commit the substantive crime ... together with the fact that the crime was not consummated due to an external fact, are sufficient to charge [a] defendant with an attempt...." *United States v. Deangelis*, 430 F.Supp. 327, 331–32 (D.P.R.1976).

## V. CONCLUSION

For the reasons stated above, the district court judgment is *reversed* and the jury verdict *vacated* as to the substantive crime.

As to conspiracy and attempt, the district court judgment is *affirmed*.