Calabrese Stables v. Mackor          CV-96-583-JD  05/14/97

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Frank Carl Calabrese
Stables, Inc., et al.

   v.                              Civil No. 96-583-JD

Jeffrey Mackor


O R D E R


The plaintiffs, Frank Carl Calabrese Stables, Inc. ("FCCSI")
and Frank C. Calabrese, brought this action against the
defendant, Jeffrey Mackor, seeking damages arising out of their
purchase from Mackor of nine thoroughbred racehorses.  Before the
court is the defendant's motion to dismiss counts I and IV of the
plaintiffs' complaint (document no. 9) and the defendant's motion
to excuse the filing of an answer to counts II and III until the
court's ruling on the motion to dismiss (document no. 10).


Background[1]

Plaintiff Frank C. Calabrese, an Illinois resident, is the
sole officer, director, and shareholder of plaintiff FCCSI, an
Illinois corporation.  At all times relevant to this lawsuit,

---

[1]The court recites the facts as alleged by the plaintiffs,
drawing all reasonable inferences in their favor.

Calabrese acted in his capacity as authorized representative of FCCSI.

In approximately March 1995, Calabrese met with defendant Mackor, a New Hampshire resident and the sole proprietor of a bloodstock business specializing in the location, purchase, and resale of thoroughbred racehorses, for the purpose of purchasing thoroughbreds through Mackor. According to the plaintiffs, at the time of the March 1995 meeting Mackor intended "to defraud FCCSI of substantial monies through a scheme whereby Mackor would solicit FCCSI to purchase thoroughbred horses that were of a bloodline or physical condition substantially inferior" than he had represented. Pursuant to this scheme, Mackor entered into an oral agreement with FCCSI by interstate telephone and, on March 30, 1995, caused FCCSI to transfer $50,000 from Illinois to a Massachusetts account bearing Mackor's name in exchange for a horse identified as "4 Color Process." Upon learning that the horse was diseased, FCCSI returned the horse to Mackor, who promised, but never provided FCCSI with, a replacement horse, and refused to refund the $50,000 purchase price.

At some point thereafter, Mackor entered into an agreement with FCCSI by interstate telephone and, on August 11, 1995, caused FCCSI to transfer $65,000 from Illinois into a Massachusetts account bearing Mackor's name, in exchange for a

thoroughbred identified as "Wackie Frankie." FCCSI later returned the horse to Mackor after learning that it was not suitable for thoroughbred training.[2]

Over the next twelve months, Mackor entered into seven similar agreements over the telephone for the sale of thoroughbreds to FCCSI, and on September 20, 1995; November 7, 1995; November 9, 1995; December 1, 1995; December 29, 1995; January 30, 1996; and August 19, 1996; caused FCCSI to transfer funds from Illinois into a Massachusetts account bearing Mackor's name or to send a check from Illinois to Mackor in New Hampshire. The horses promised in exchange for the FCCSI's payments were either unhealthy, not suitable for thoroughbred training, or not shipped to FCCSI. Despite promises to do so, Mackor has not provided replacements for the horses deemed unsuitable, remedied any of the claimed deficiencies in the horses, or shipped the horses that were not sent. In addition, he has refused to refund the purchase price of any of the horses to FCCSI.

On November 21, 1996, the plaintiffs filed their complaint

---

[2]Following FCCSI's return of Wackie Frankie, Mackor promised FCCSI over the telephone that he would place the horse with an independent trainer at his own cost and return the horse to FCCSI when it was ready for training. On November 11, 1996, Mackor sent the horse back to FCCSI, which again deemed it not suitable for training, and kept it "for evidentiary purposes in connection with the instant complaint." Mackor has not provided FCCSI with a different horse or refunded the $65,000.

3

in the instant action, asserting that Mackor's conduct constitutes (1) a pattern of racketeering activity, as defined the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) fraud; and (3) breach of contract.[3]

## Discussion

Mackor argues that dismissal of the plaintiffs' RICO claim is warranted pursuant to Rule 12(b)(6) because the alleged racketeer -- defendant Mackor-- is indistinct from the alleged criminal enterprise -- Mackor's sole proprietorship -- with which he is alleged to have associated. Mackor further contends that dismissal is warranted because the plaintiffs have failed to allege a pattern of racketeering activity sufficient to trigger liability under RICO. The plaintiffs dispute both of these assertions, arguing that they are is entitled to offer evidence, and have in fact already offered evidence in the form of materials attached to their complaint, indicating that Mackor is distinct from his sole proprietorship. The plaintiffs also contend that the nine predicate acts over a seventeen-month

---

[3]Plaintiff Calabrese originally brought a fourth count on his own behalf, alleging that Mackor had breached an agreement to repay a $5000 loan from Calabrese. The instant motion seeks to dismiss this count for lack of subject matter jurisdiction. Because Calabrese has agreed to dismiss this claim voluntarily, count IV is hereby dismissed without prejudice.

4

period alleged in the complaint are sufficient to constitute a pattern of racketeering activity.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is one of limited inquiry, focusing not on "whether [the] plaintiff[s] will ultimately prevail but whether the claimant[s are] entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Accordingly, the court must take the factual averments contained in the complaint as true, "indulging every reasonable inference helpful to the plaintiff[s'] cause." Garita Hotel Ltd. Partnership v. Ponce Fed. Bank, 958 F.2d 15, 17 (1st Cir. 1992); see also Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). In the end, the court may grant a motion to dismiss under Rule 12(b)(6) "'only if it clearly appears, according to the facts alleged, that the plaintiff[s] cannot recover on any viable theory.'" Garita, 958 F.2d at 17 (quoting Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990)).

28 U.S.C. § 1962(c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

28 U.S.C.A. § 1962(c) (West 1994). Congress has provided a

5

private right of action to any person injured in his business or property by reason of another party's commission of a RICO violation. See id. § 1964(c) (West 1984).

It is well settled that, to trigger liability under RICO, "the same entity cannot do double duty as both the RICO defendant and the RICO enterprise." See, e.g., United States v. London, 66 F.3d 1227, 1244 (1st Cir. 1995) (quoting Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)), cert. denied, 116 S. Ct. 1542 (1996). Thus, the critical inquiry in determining whether the owner of a sole proprietorship's association with the sole proprietorship can form the basis of liability under § 1962(c) is whether the sole proprietorship contains at least one employee other than the sole proprietor. See id.; see also McCulloch v. Suter, 757 F.2d 142, 144 (7th Cir. 1985) (while sole proprietor operating as "one-man band" is incapable of associating with proprietorship under RICO, enterprise is distinct entity if sole proprietor has employees or associates).

In light of the fact that a sole proprietor may associate with his proprietorship if the proprietorship has employees, the plaintiffs' allegation that Mackor is the sole proprietor of a bloodstock business does not, by itself, foreclose the possibility of his forming a cognizable association with that enterprise. In fact, the plaintiffs have attached to their

6

complaint the receipts from the wire transfers by FCCSI to Mackor, four of which designate either Linda Mackor or Mark Little as a co-recipient of the funds. The plaintiffs are entitled to offer evidence that these individuals, or others, are employees or associates of Mackor's sole proprietorship, and that Mackor's association with this enterprise is actionable under RICO. Accordingly, the court turns to the question of whether the plaintiffs have alleged a pattern of racketeering activity sufficient to give rise to RICO liability.

In order to prove a pattern of racketeering activity under RICO a plaintiff must show at least two predicate acts of racketeering that are (1) related; and (2) amount to or pose a threat of continued criminal activity. See 18 U.S.C.A. § 1961(5) (West 1984); H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 237 (1989). Predicate acts satisfy the relatedness prong if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J., 492 U.S. at 240. Here, the predicate acts alleged by the plaintiffs involve a common scheme to commit a series of frauds against a single person and the corporation through which he transacted business. These allegations clearly are sufficient to satisfy the relatedness prong. See Fleet Credit Corp. v. Sion,

7

893 F.2d 441, 447 (1st Cir. 1990).

As noted above, predicate acts can satisfy the continued criminal activity prong in either of two ways. First, the acts can form a closed period of repeated conduct, and thus amount to continued criminal activity, if they "extend[] over a substantial period of time," H.J., 492 U.S. at 242, and are high in number, see Fleet, 893 F.2d at 446. Compare id. at 447 (ninety-five acts of mail fraud over four and one-half year period amounted to continuing criminal activity) with Lincoln House, Inc. v. Dupre, 903 F.2d 845, 846-47 (1st Cir. 1990) (six specific acts of mail fraud over twenty-three months suggested only "sporadic criminal activity"); Parcoil Corp. v. Nowsco Well Service, Ltd., 887 F.2d 502, 504 (4th Cir. 1989) (continuity not established by sending of seventeen falsified reports over four-month period), cited in Fleet Credit, 893 F.2d at 447; Cyker v. Four Seasons Hotels Ltd., No. 90-11929-Z, 1991 WL 1401 at *3 (D. Mass. Jan. 3, 1991) (building managers' failure to reveal to tenants what they knew about hazardous condition over two-year period not ongoing wrong cognizable under RICO); and National Credit Union Admin. Bd. v. Regine, 749 F. Supp. 401, 407 (D.R.I. 1990) (fraudulent scheme consisting of four transactions occurring over nineteen-month period insufficient to satisfy continuity prong). Relevant to an assessment of the number of predicate acts and the length of time

8

over which they extend is the First Circuit's admonition that "[a] single episode of criminal behavior, even if it involves the commission of multiple related acts, does not constitute a pattern." Schultz v. Rhode Island Hosp. Trust Nat'l Bank, 94 F.3d 721, 731 (1st Cir. 1996); see also Apparel Art Inter., Inc. v. Jacobsen, 967 F.2d 720, 722-24 (1st Cir. 1992) (differentiating between a single episode of criminal conduct comprised of several criminal acts and a pattern of related but nonetheless independent criminal activities).

Predicate acts alleged by the plaintiff may also satisfy the continuity prong, if, by their very nature, they "project[] into the future with a threat of repetition." Fleet, 893 F.2d at 447 (quoting H.J., 492 U.S. at 241). To survive a motion to dismiss on the theory that the acts alleged pose a threat of continued criminal activity, a plaintiff must "sufficiently allege a 'distinct threat of long-term racketeering activity, either implicit or explicit,' which may be inferred from the nature of the enterprise if it existed for criminal purposes or that the predicate acts are part of the regular way of doing business." Rini v. Zwirn, 886 F. Supp. 270, 300 (E.D.N.Y. 1995) (quoting H.J., 492 U.S. at 242); see, e.g., Banks v. Wolk, 918 F.2d 418, 423 (3d Cir. 1990) (while allegations against one set of defendants did not indicate that these defendants threatened

9

future harms to anyone and thus did not satisfy RICO's continuity requirement, allegations in complaint that other defendants had engaged in fraudulent behavior extending "well beyond" one particular scheme indicated that those defendants had engaged in pattern of racketeering activity); Terrell v. Childers, No. 93-C-2460, 1993 WL 433687 at *9 (N.D. Ill. Oct. 21, 1993) (plaintiffs properly alleged open-ended scheme, and thus satisfied continuity requirement, where complaint alleged the existence of similar schemes directed against multiple similar victims); Rhone v. Energy North, Inc., 790 F. Supp. 353, 360 (D. Mass. 1991) (granting motion to dismiss RICO claim where defendant had ceased doing business with plaintiff and plaintiff did not allege that predicate acts alleged were defendant's regular way of doing business); Regine, 749 F. Supp. at 407-08 (granting 12(b)(6) motion on RICO claim where plaintiffs failed to allege that predicate acts constituted defendants' manner of doing business or would be repeated in future).

The plaintiffs' complaint fails to allege facts sufficient to satisfy either theory of continuity. Although the nine predicate acts alleged span approximately seventeen months, all but one of the acts took place between March 30, 1995, and January 30, 1996, a period of ten months, and all but two took place between August 11, 1995, and January 30, 1996, a period of

10

less than six months.  In light of the limited number of predicate acts and the relatively short span over which they occurred, the conduct alleged by the plaintiffs more closely resembles the sporadic or short-term activity of cases such as Parcoil and Lincoln House than it does the continued criminal activity that the First Circuit deemed actionable in Fleet Credit.  Moreover, the plaintiffs have alleged that, at the time he was introduced to Calabrese in March 1995, Mackor already had formed the intent to defraud FCCSI of money by soliciting him to purchase horses of a substandard quality.  This allegation indicates that the nine acts alleged are more akin to a single episode of criminal behavior comprised of a sequence of related acts than to a pattern of nine independent events.  Accordingly, the court finds that the plaintiffs' allegations, even if proven, do not amount to a continuing pattern of criminal activity sufficient to trigger liability under RICO.

Nor is the court persuaded by the plaintiffs' assertion that the defendant's conduct, although "necessarily speculative," Memorandum of Law in Opposition to Motion to Dismiss at 7, threatens to continue in the future.  The plaintiffs' complaint is devoid of any allegation that the defendant's enterprise exists for a criminal purpose or that the predicate acts alleged represent the regular manner in which Mackor conducts his business.  Indeed, the complaint is solely confined to the single

11

scheme allegedly perpetrated against the plaintiffs, and does not allude to any similar schemes perpetrated by the defendant against other victims. Absent any allegation to support a conclusion that Mackor's conduct poses a threat of continuing criminal activity, the plaintiffs have failed to state a RICO claim based on an open-ended theory of continuity. The defendant's motion to dismiss counts I and IV must therefore be granted.

## Conclusion

The defendant's motion to dismiss counts I and IV (document no. 9) is granted. The defendant's motion to excuse the filing of an answer (document no. 10) is granted. The defendant shall file an answer to counts II and III by June 2, 1997.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

May 14, 1997

cc: Douglas J. Miller, Esquire
    Jeffrey H. Bunn, esquire
    David R. Herzog, Esquire
    James Kaklamanos, Esquire

12