**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Andres Edward PEREZ, a/k/a Andy**
**Edward Perez, Defendant-Appellant.**

**No. 77–1929.**

United States Court of Appeals,
Tenth Circuit.

June 18, 1979.

---

David Williams, Albuquerque, N.M. (Victor R. Ortega, U.S. Atty., and Ronald F. Ross, Asst. U.S. Atty., Albuquerque, N.Mex., on the brief), for plaintiff-appellee.

Jack A. Smith, Albuquerque (Sarah M. Singleton and Pickard & Singleton, Santa Fe, N.Mex., on the brief), for defendant-appellant.

Before McWILLIAMS, DOYLE and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

In an eight-count indictment Andres Edward Perez was charged with transporting

aliens from Santa Fe, New Mexico, to a place north of Santa Fe, knowing that such aliens had entered the United States illegally, in violation of 8 U.S.C. § 1324(a)(2). Each count related to a different alien person. Perez was convicted by a jury on all eight counts.

On appeal Perez raises the following as grounds for reversal: (1) Government participation in the transaction at a level so intolerably high that Perez was denied due process of law; (2) failure of the trial court to instruct on entrapment; (3) refusal of the trial court to instruct the jury that it must acquit if the aliens here in question were duly admitted into the United States; and (4) refusal of the trial court to permit defense counsel to bring out on cross-examination of a Government informant the fact that he had suffered a conviction for embezzlement in 1958. None of these matters warrants reversal. We therefore affirm.

Clay Fike, a Government informant, was a key witness. He testified at trial that he had first met Perez in a bar located near Bernalillo, New Mexico, on May 10, 1977, where the two were introduced by the owner of the bar. On this occasion, a friend slapped Perez on the shoulder, and Perez referred to his friend as an "illegal alien." This was the initial introduction into their conversation of the subject of illegal aliens. The conversation between Fike and Perez thereupon briefly turned to a discussion concerning Mexican nationals and how to get "them up here." After this brief introduction, Fike declined to "talk business" while drinking, and this initial meeting between Fike and Perez terminated. However, Fike reported the incident to the New Mexico State Police.

About two weeks after their first meeting, Fike and Perez had a second meeting in a bar located in Albuquerque, New Mexico. This meeting was at the instance of Perez. On this occasion, Perez stated that he had a number of Mexican aliens waiting near Juarez, Mexico, and that he "needed a runner, someone to transport them from El Paso to Santa Fe." Fike agreed to be that runner. Specifically, in response to Perez' offer,

Fike agreed to drive to El Paso, Texas and transport a load of alien workers from there to Santa Fe, New Mexico for $100 per person plus expenses. Perez then gave Fike detailed instructions on how to make contact with one Antonio Garcia in Juarez, commenting that he, Perez, had "done business" with Garcia for twenty years.

During the following weeks, Fike had several meetings with Perez. Particularly, Fike met with Perez on July 5, 1977, in a Santa Fe bar. On that occasion Perez placed a telephone call to Antonio Garcia in Juarez, Mexico, and confirmed the fact that Garcia had a "load" of eight Mexican nationals ready for transportation into the United States. Perez asked Fike "to go after them," and Fike agreed to do so.

Following this meeting on July 5, 1977, Fike again contacted the New Mexico State Police, and Fike, with the assistance of the state police, rented a van. Fike and Fred Encinias, a plain clothes state policeman, then drove the van to El Paso, where contact was made with Antonio Garcia. Garcia directed Fike to a remote place a few miles from Clint, Texas, where the aliens were waiting. Fike and Encinias proceeded to the location given them by Garcia, and there picked up eight Mexican nationals who had just waded across the Rio Grande River. The eight were loaded into the van, and Fike and Encinias proceeded to drive from El Paso, Texas, to Santa Fe, New Mexico.

The Immigration and Naturalization Service had been apprised of this operation, and its agents "monitored" the van as it proceeded to Santa Fe, even helping out along the road to push the van when it got stuck in some sand.

When the parties reached Santa Fe, Fike turned the van over to Perez. The latter proceeded to collect a fee from each of the eight Mexican nationals. He then started to drive the van to Longmont, Colorado, where he intended to turn the eight aliens over to a Japanese farmer. The authorities allowed Perez to proceed some ten miles or more before the van was stopped and Perez, along with the eight aliens, was arrested.

At trial Fike and Encinias both testified. Also, each of the eight Mexican nationals testified. The testimony of the Mexican nationals was all to the same effect: Antonio Garcia had organized the trip; each had illegally entered the United States; they had ridden in the van from Clint, Texas to a point north of Santa Fe, New Mexico; and each had paid a sum of money to Perez. An agent for the Immigration and Naturalization Service was also called as a Government witness. The defense called no witness. It was on such state of the record that the jury convicted Perez on all eight counts.

■ In our view, the facts in the instant case do not support Perez' contention that the Government's conduct was so outrageous and represented such impermissible participation by the Government in the transaction that Perez was denied due process of law. Nor did the evidence require that the issue of entrapment be submitted to the jury. Contrary to the statement of counsel, the record indicates to us that it was Perez, the defendant, who first initiated conversation with Fike, the informant, concerning illegal aliens and their transportation from the border area into the Santa Fe area. Certainly the evidence indicates that Perez most definitely had a predisposition to commit the crime with which he was later charged and convicted. The fact that Fike accepted Perez' offer and thereafter transported illegal aliens from Clint, Texas, to Santa Fe, where he turned them over to Perez, does not constitute "outrageous conduct" of the kind alluded to in *United States v. Russell*, 411 U.S. 423, 431, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Similarly, there is nothing in the present record to indicate that Perez is a person "otherwise innocent" whom the Government seeks to punish for an offense which was initiated by, and was the creative activity of its own officials. *Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). To the contrary, the evidence permits only one reasonable inference, namely, that Perez was in the business of transporting illegal aliens within the United States, and that here he made the fatal mistake of enlisting the aid of one who thereafter turned informant. The evidence did not require dismissal of the indictment because of shocking Government participation, nor did it require submitting the question of entrapment to the jury with appropriate instruction.

■ Counsel contends it was error for the trial court to refuse to instruct the jury that it should acquit if the aliens here involved were "duly admitted" into the United States. The jury was instructed, however, that in order to convict, the jury must find that the aliens were in this country illegally, and the undisputed evidence is that all eight aliens unlawfully entered into this country by crossing the Rio Grande River. The instructions as given adequately covered this matter.

■ As indicated, there is no doubt that the eight aliens here involved did illegally enter this country. Counsel's main complaint in this regard would therefore appear to be that the agents of the Immigration and Naturalization Service did not immediately arrest the eight, but chose to follow the van from Clint, Texas to Santa Fe, New Mexico, and thereby ascertain whether Perez was involved in the transaction. This decision to refrain from an immediate arrest in order to see who might be further implicated does not constitute Government misconduct, nor is it *any* evidence that the eight aliens were "duly admitted" into this country.

■ As above indicated, Fike had suffered a conviction for embezzlement in 1958 for which he was placed on probation. Perez was tried in 1977. Prior to trial, the trial court, after hearing, ruled that evidence of this prior conviction, occurring some nineteen years before, could not be used by defense counsel for the purpose of attacking Fike's credibility. Such is in accord with Fed.R.Evid. 609(b). Nor was the matter somehow made relevant by Fike's testimony during cross-examination. In cross-examination, Fike had indicated that he had made "two previous trips," presumably for Perez, and that he had not been arrested on

either occasion. Such response did not render admissible evidence of a conviction for embezzlement occurring in 1958.

Judgment affirmed.