**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Alfred HANNA, Defendant-Appellant.**

No. 80–5218

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Unit B

March 9, 1981.

## ON PETITION FOR REHEARING

Before GODBOLD, Chief Judge, KRAV-ITCH and HATCHETT, Circuit Judges.

PER CURIAM:

It is ORDERED that the opinion, filed as an unpublished opinion [631 F.2d 730 (5th Cir.)] on October 27, 1980, shall be published. 639 F.2d 192 (5th Cir.).

Appellant was convicted of having knowingly and intentionally encouraged and induced the unlawful entry of aliens into the United States in violation of 8 U.S.C. § 1324(a)(4):

> Any person, including the owner, operator, pilot, master, commanding officer, agent or consignee of any means of transportation who ... willfully or knowingly encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of any alien ... not duly admitted by an immigration officer or not lawfully entitled to enter or reside within the United States ... [shall be guilty of an offense].

We affirmed the conviction.

Appellant has petitioned for rehearing on the basis of *U. S. v. Kavazanjian*, 623 F.2d 730 (1st Cir. 1980), in which the court overturned a conviction under § 1324(a)(4). We doubt that *Kavazanjian* was correctly decided, but even if it was it does not control the case before us. There the defendants were charged in count one with acts of conspiracy, one of which acts was conspiracy to violate § 1324 by encouraging or inducing the entry into the United States of aliens not lawfully entitled to enter or reside here. Counts two and three charged substantive violations of § 1324.

The gist of the scheme carried out by defendants in *Kavazanjian* was to arrange, for a fee, for aliens to come to this country under the travel without visa (TWOV) privilege which permits an alien traveling from one foreign country to another with a stopover in the United States to proceed in "immediate and continuous transit" through this county without passport or visa. 8 U.S.C. § 1182(d)(4)(C) (1970). One traveling under TWOV must establish that he has confirmed means to leave the country, he must depart within eight hours or on the next available transport, and the responsibility for his custody lies in the transportation line that brought him to the United States unless INS intervenes. *Kavazanjian*, 623 F.2d at 733. When the aliens involved in the scheme arrived at American airports defendants would take them (or steer them) to INS at the airport and on their behalf make application for parole, a temporary status available for foreign nationals seeking asylum in the United States because of persecution in their native countries. In some instances defendants spirited the aliens out of the airport without INS ever seeing them. After leaving the airport the aliens involved would have to later establish their right to asylum.

"Entry" is defined in 8 U.S.C. § 1101(a)(13) (1970) as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession." The court in *Kavazanjian* held that a conviction under § 1324(a)(4) required an "actual or contemplated entry." In finding the meaning of "entry" under § 1324(a)(4) the court adopted from other contexts a

judicial gloss on physical presence consisting of freedom from restraint. It then reasoned that aliens entering under TWOV were not free from restraint but in the custody of the transportation company awaiting transportation out. Nor were they freed from restraint when under parole, because parole entails restraint and, in any event, has been held not to affect or constitute "entry". The court considered that the scheme might be a fraud and based upon misrepresentations by the aliens but nevertheless, in the end, any one of them might receive parole and then be granted asylum (and thus would never have "entered"). As to those who fled the airport, on similar reasoning it was held that they committed no offense because later they were actually paroled. Finally, the court held that the offense could not be predicated upon the possibility that an alien ultimately might be granted asylum—and thus have moved from a "non-entered" status to an "entered" status because the possibility of asylum was too speculative.

The appellant was not involved in any comparable Tinker to Evers to Chance scheme that for purposes of § 1324(a)(4) left his possible criminal responsibility in limbo. He contemplated bringing his passengers to the United States. He brought them by boat, clandestinely and at night, to the Miami docks. His passengers did not assert any status parallel to the TWOV privilege. They had no means for leaving the country if the United States did not admit them.

The ultimate thrust of the petition for rehearing is that appellant cannot be found to have violated the statute because his passengers were paroled (and thus were under restraint, and one under restraint has never "entered" the country). Parole is a humanitarian device that permits an alien physically present in the country to have his status remain undetermined, without his being considered to have "entered" the country, while his right to asylum is determined.

[A]s the Supreme Court has explained, "The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status ...." *Leng May Ma v. Barber*, 357 U.S. 185, 190, 78 S.Ct. 1072, 1075, 2 L.Ed.2d 1246 (1958) (construing 8 U.S.C. § 1253(h), which pertains to aliens "within the United States"). The statutory provision authorizing the grant of parole specifically embraces this principle, stating that "such parole of such alien shall not be regarded as an admission of the alien..." 8 U.S.C. § 1182(d)(5) (1970). *Kavazanjian*, 623 F.2d at 737.

It would be a misuse of the parole concept to conclude that one who physically transports into the United States persons not otherwise entitled to come in cannot be guilty under § 1324(a)(4) if the United States grants parole to those brought in while it determines whether they should be given asylum. Indeed petitioner's rationale would apply as well if the persons brought in were arrested and confined, that is, placed under restraint in the purest sense.

The petition for rehearing is DENIED.