UNITED STATES of America,
Plaintiff–Appellee,

v.

Lorenzo ALVARADO–MACHADO,
Defendant–Appellant.

No. 88–1307.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1989.

---

[1]. 28 U.S.C. § 2255.

J. Michael Worley, Asst. U.S. Atty., Marvin Collins, U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

Before WILLIAMS, HIGGINBOTHAM and SMITH, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

On November 28, 1987, Lorenzo Alvarado–Machado (Alvarado) was arrested by INS agents. Alvarado was in the company of five persons identified by the INS as illegal aliens. He was indicted and convicted for transporting these "passengers" in violation of 8 U.S.C. § 1324(a)(1)(B) (Supp. IV 1986).[1] Alvarado now appeals his conviction on all five counts.

Four of the passengers testified at Alvarado's trial. Each stated that he was a citizen of Mexico. According to their testimony, defendant Alvarado met them in Juarez, Mexico, and guided them across the river and into the United States. Alvarado then drove these aliens to Fort Worth, where all six individuals were arrested by INS agents.

Two of the aliens, Javier Arredondo–Urbina ("Arredondo") and Jose Guadalupe Barraza–Corral ("Barraza"), were acting as informants for the INS. They tipped off INS agents to meet them in Fort Worth.

The two informants had been released from INS custody on parole prior to their journey to Mexico and back into the United States. Both were in possession of an INS form I–210 at the time they were transported by Alvarado. The I–210 form entitles an alien to remain temporarily in the United States. An INS agent testified that the two informants were "paid" for their participation in the undercover scheme by giving them the I–210 form.

After arrest, each of the five passengers was released pending Alvarado's trial.

Santiago Salinas, Jr., Fort Worth, Tex. (Court-appointed), for defendant-appellant.

1. The statute imposes criminal penalties on any person who:

[K]nowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law.

8 U.S.C. § 1324(a)(1)(B) (Supp. IV 1986).

One of the passengers, Victor Ramirez–Marquez, disappeared after his release. He did not testify at Alvarado's trial.

After a trial by jury, Alvarado was convicted on five counts of transporting illegal aliens, one count for each passenger. The judge sentenced him to twelve months confinement under the Uniform Sentencing Guidelines.

## I. *Due Process*

Alvarado first argues that his entire conviction should be reversed because the government's conduct in using aliens as bait to induce a crime was so outrageous that due process principles require reversal. Alvarado relies on *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), in which the Supreme Court stated:

> [W]e may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction.

*Id.* at 431–32, 93 S.Ct. at 1643. Alvarado also refers to *United States v. Valdovinos–Valdovinos,* 588 F.Supp. 551 (N.D.Calif.1984), *rev'd on other grounds* 743 F.2d 1436 (9th Cir.1984), *cert. denied,* 469 U.S. 1114, 105 S.Ct. 799, 83 L.Ed.2d 791 (1985). In *Valdovinos,* an INS agent posing as a potential employer lied to Mexican citizens, advising them that it was appropriate to enter the United States without immigration papers. The INS devised this scheme in hopes of tracking the aliens and arresting their transporters. *Valdovinos,* 588 F.Supp. at 553. The district court struck down the conviction for transporting illegal aliens arising out of the INS plan based on the outrageous conduct of the government official.

Alvarado cannot prevail with this argument. It is well-established that the use of informants and undercover agents is permissible in government investigations. *Sorrells v. United States,* 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932).

The facts justifying Alvarado's conviction are clearly distinguishable from that of *Valdovinos.* By posing as an employer and advising that entry to the United States without the appropriate visas was acceptable, the INS agent was found to have been engaged in the generation of crime "merely for the sake of pressing charges." *Valdovinos,* 588 F.Supp. at 556. Reviewing the government agent's actions, the court there said, "[t]his is not the infiltration of crime; it is its creation." *Id.* The INS agents in the present case never told the informants, Arredondo or Barraza, to cross the border illegally; they told them to report if they ever came back to the United States.

■ Merely setting a trap to catch a "coyote" (a smuggler of illegal aliens) and recompensing Arredondo and Barraza by giving them I–210 forms is not in itself outrageous. In factual circumstances very similar to this case, the Tenth Circuit found *Valdovinos* inapplicable and found no outrageousness requiring reversal. *U.S. v. Morales–Quinones,* 812 F.2d 604, 610–11 (10th Cir.1987); *cf. U.S. v. Perez,* 600 F.2d 782, 785 (10th Cir.1979).

■ Further, Alvarado undertakes to complain that the government has violated the due process rights of the *alien informers.* He does not have standing to raise this claim. *United States v. Valdovinos–Valdovinos,* 743 F.2d 1436, 1437–38 (9th Cir.1984), *cert. denied,* 469 U.S. 1114, 105 S.Ct. 799, 83 L.Ed.2d 791 (1985). The Supreme Court has stated that the outrageous government conduct defense under the due process clause comes "into play only when the Government activity in question violates some protected right of the *defendant.*" *Hampton v. United States,* 425 U.S. 484, 490, 96 S.Ct. 1646, 1650, 48 L.Ed.2d 113 (1976) (plurality opinion) (emphasis in original); *see also United States v. Payner,* 447 U.S. 727, 737 n. 9, 100 S.Ct. 2439, 2447, 65 L.Ed.2d 468 (1980).

Finally, a common thread running throughout our rejection of outrageous conduct claims is that one who is an active and willing participant in the criminal conduct which gave rise to his arrest cannot later complain of outrageous governmental

conduct. *United States v. Miller*, 799 F.2d 985, 988–89 (5th Cir.1986); *United States v. Yater*, 756 F.2d 1058, 1065–66 (5th Cir. 1985). The facts indicate that Alvarado was such a participant.

## II. *Counts IV and V: Conviction for Transporting the Government Informers*

■ Alvarado next argues that there is not sufficient evidence to sustain his conviction on counts IV and V for transporting the government informers. In assessing the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The jury verdict may be reversed "only if a reasonably minded jury must necessarily have entertained a reasonable doubt of a defendant's guilt." *United States v. Vergara*, 687 F.2d 57, 60 (5th Cir.1982).

■ The aliens' status is an element of the crime of transporting illegal aliens. *United States v. Merkt*, 794 F.2d 950, 964 (5th Cir.1986), *cert. denied*, 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987). Alvarado contends that the two informants were not transported in violation of law because they possessed INS documents entitling them to remain and work temporarily in the United States. Alvarado therefore argues that the informants were not in the country illegally, and transporting them could not be a crime.

The parole of the aliens by use of the I–210 form did not entitle the aliens to leave and then re-enter the United States. Instead, the permission to remain became void when the aliens left the country. The parole does not vest an alien with the right to enter or reside in the country. "The paroled alien is in the same position as one who seeks admission on the border." *Delgado–Carrera v. United States Immigration and Naturalization Service*, 773 F.2d 629, 632 (5th Cir.1985) (in context of an expulsion proceeding).

■ The Supreme Court also has made clear the status of an alien parolee. "[T]he parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status...." *Leng May Ma v. Barber*, 357 U.S. 185, 190, 78 S.Ct. 1072, 1075, 2 L.Ed.2d 1246 (1958); *United States v. Hanna*, 639 F.2d 194, 196 (5th Cir. Unit B, March 1981). Therefore, because "parole status does not confer a lawful entitlement to enter or reside in the United States ... the government's conferring of parole status is irrelevant to the issue of the defendants' guilt or innocence [of smuggling illegal aliens into the United States]." *United States v. Anaya*, 509 F.Supp. 289, 299 (S.D.Florida 1980) (*en banc* decision of district judges) *aff'd*, *United States v. Zayas–Morales*, 685 F.2d 1272 (11th Cir.1982). It follows that even though Arredondo and Barraza were paroled *before* they left the country, their re-entry was as illegal as if they had never been paroled at all. We uphold Alvarado's conviction on Counts IV and V.

## III. *Count III: The Alien Who Did Not Testify*

Alvarado also contests his conviction on count III for transporting Victor Ramirez–Marquez (Ramirez). Ramirez did not testify at trial. The judge excluded as hearsay an INS agent's testimony that Ramirez had told the agent that he was a citizen of Mexico, but testimony that Ramirez had been given an I–210 form was admitted.

Alvarado challenges his conviction on this count for lack of sufficient evidence that the individual named in the indictment was an illegal alien transported by Alvarado. In support of the conviction, the government summarizes the evidence as follows: (1) An individual named Victor Ramirez–Marquez was among the six who crossed the river. (2) Ramirez was in the vehicle traveling to Fort Worth and was arrested by the INS. (3) Ramirez was released by the INS pending Alvarado's trial. (4) An agent testified that all the passengers, including Ramirez, were given I–210 parole forms after apprehension.

In order to be convicted of transporting illegal aliens under 8 U.S.C. § 1324(a)(1)(B), the alienage of those transported must be proved. *Merkt,* 794 F.2d at 964. No admissible evidence was presented which demonstrated Ramirez's alienage beyond a reasonable doubt. Ramirez did nothing which a citizen might not have done except receive an I–210 form. There is no evidence which shows he requested the form. It was given routinely to everyone in the car except Alvarado. So it might have been thrust upon Ramirez, and he may have unwittingly accepted it. Even viewing the evidence in the light most favorable to the government, a reasonable jury would have to have entertained reasonable doubts as to the identity and status of the individual named in the indictment in count III. This conviction must be set aside.

### IV. *Sentencing Guidelines*

Alvarado was sentenced under the Uniform Sentencing Guidelines, promulgated by the United States Sentencing Commission, a body created under the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.* (1982 and Supp. IV 1986) and 28 U.S.C. §§ 991–998 (1982 and Supp. IV 1986). His complaint that these Guidelines violated the separation of powers doctrine is fruitless, as the Guidelines have been upheld against such a challenge by the Supreme Court. *Mistretta v. United States,* —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) .

We therefore uphold the jury's findings on counts I, II, IV, and V, and reverse on count III. Since only a single sentence was assessed, we must remand to the district court for resentencing.

AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR RESENTENCING.